1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   BLUE LAKE RANCHERIA, a federally )   Case No. 2:11-CV-01124 JAM-JFM
     recognized Indian Tribe; BLUE    )
12   LAKE RANCHERIA ECONOMIC          )   ORDER DENYING DEFENDANTS'
     DEVELOPMENT CORPORATION, a       )   MOTION TO DISMISS
13   federally-chartered tribal       )
     corporation; and MAINSTAY        )
14   BUSINESS SOLUTIONS, a federally  )
     authorized division of Blue Lake )
15   Rancheria Economic Development   )
     Corporation,                     )
16                                    )
                       Plaintiffs,    )
17                                    )
          v.                          )
18                                    )
     MARTY MORGENSTERN, individually  )
19   and in his official capacity as  )
     Secretary of the California      )
20   Labor and Workforce Development  )
     Agency; PAM HARRIS, individually )
21   and in her official capacity as  )
     Chief Deputy Director of the     )
22   Employment Development           )
     Department of the State of       )
23   California ("EDD"); JACK         )
     BUDMARK, individually and in his )
24   official capacity as a Deputy    )
     Director of the Tax Branch of    )
25   the EDD; TALBOTT SMITH,          )
     individually and in his official )
26   capacity as a Deputy Director of )
     the Unemployment Branch of the   )
27   EDD; KATHY DUNNE, individually   )
     and in her official capacity as  )
28   a Senior Tax Compliance          )
     Representative of EDD; SARAH     )

REECE, individually and in her )
official capacity as an )
Authorized Representative of the )
EDD; THE STATE OF CALIFORNIA; )
THE EMPLOYMENT DEVELOPMENT )
DEPARTMENT, a department of the )
State of California; and DOES 1- )
50, inclusive, )
                    Defendants. )
_____ )

This matter is before the Court on Defendants' Marty Morgenstern ("Morgenstern"), Pam Harris ("Harris"), Jack Budmark ("Budmark"), Talbott Smith ("Smith"), Kathy Dunne ("Dunne") and Sarah Reece ("Reece"), the State of California (the "State"), and the Employment Development Department ("EDD") (collectively "Defendants") Motion to Dismiss (Docs. #26, #36) Plaintiffs' Blue Lake Rancheria ("the Tribe"), Blue Lake Rancheria Economic Development Corporation ("EdCo"), and Mainstay Business Solutions ("Mainstay") (collectively "Plaintiffs") Complaint (Doc. #1).

Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure to state a claim. Plaintiffs oppose the motion (Doc. #46).[1] For the reasons set forth below, the motion to dismiss is DENIED.

I.   FACTUAL ALLEGATIONS AND SUMMARY OF ARGUMENTS

Plaintiffs seek to enjoin Defendants from enforcement of State unemployment insurance taxes. Defendants are attempting to collect approximately $19,285,572.67 in state unemployment

---

[1] This matter was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). Oral argument was scheduled for September 21, 2011.

2

1   insurance contributions that Defendants assert are owed by

2   Mainstay.   Plaintiffs allege that if any money is owed, it is

3   less than the amount Defendants seek to recover.  Compl., ¶ 26.

4   Plaintiffs argue that Defendants' collection activities violate

5   tribal sovereign immunity and unlawfully encumber tribal land

6   and tribal assets.  Compl., ¶ 31.   The Complaint alleges that

7   Plaintiffs have not waived sovereign immunity, nor has Congress

8   abrogated the Tribe's sovereign immunity.  Compl., ¶¶ 32,33.

9   Accordingly, the Complaint seeks a declaration that Defendants'

10  collection activities are violating Plaintiffs' tribal sovereign

11  immunity and unlawfully encumbering tribal assets and land, both

12  on and off the reservation.  The Complaint also seeks an

13  injunction enjoining Defendants from continuing to bring levies

14  and liens on Tribal assets and property, and requiring

15  Defendants to cancel any existing liens and return any funds

16  seized in response to the existing liens.

17      Plaintiffs' suit concerns the collection of unemployment

18  insurance contribution payments, pursuant to the Federal

19  Unemployment Tax Act, 26 U.S.C. § 3301 et seq. ("FUTA").   FUTA

20  is a joint federal-state program for unemployment insurance.

21  FUTA was amended in 2001 to require states to allow Indian

22  tribes to elect to be a reimbursing employer.  A reimbursing

23  employer reimburses the State for all benefits paid to former

24  employees.  (Cal. Unempl. Ins. Code 803(b).)  Mainstay elected

25  to be a reimbursing employer under FUTA, and held this

26  designation from 2003 to 2010.  Compl., ¶ 24.  Mainstay ceased

27  making full contribution payments as required, prompting

28  Defendants to eventually begin the collection activities at

issue in this suit.

## II.   PROCEDURAL BACKGROUND

Plaintiffs brought a motion for a preliminary injunction, which this Court heard on June 29, 2011 (see Transcript, Doc. #31). The Court granted the motion on August 11, 2011 (Doc. #40), following the submission of supplemental briefing by both parties.  The preliminary injunction enjoined Defendants from further collection activities, ordered them to withdraw and release any liens and levies placed on Plaintiffs' assets and deposit with the Court the amount that had already been collected through the liens and levies.  Defendants deposited the required sum with the Court, and have filed a notice of appeal (Doc. #42) of the preliminary injunction order. Plaintiffs have voluntarily dismissed from the suit defendants the State of California and the Employment Development Department (Doc. #45).  Accordingly, "Defendants" for purposes of this order refers only to the individual defendants, not the dismissed State and EDD defendants.

Defendants' Reply brief (Doc. #47) also raised the new argument that only defendant Harris is a properly named defendant, because under California Unemployment Insurance Code § 301(c) only the Director of EDD is vested with responsibility for filing and releasing liens.  However, as Plaintiffs' contend in the sur-Reply (Doc. #52) ordered by this Court, Defendants offer no legal authority for their argument.  Each individually named Defendant is alleged to have some connection with the collection actions at issue in this suit, Compl., ¶ 14, as

4

1  required under Ex Parte Young, 209 U.S. 123 (1908) for suits

2  against state officers.  See also Los Angeles County Bar Ass'n

3  v. Eu, 979 F.2d 697, 704 (9th Cir. 1992).  Accordingly, at this

4  time the Court will not dismiss any of the individually named

5  defendants from this suit.

6

7                          III. OPINION

8      A.    Legal Standard

9            1.    12(b)(6) Motion to Dismiss

10     A party may move to dismiss an action for failure to state

11 a claim upon which relief can be granted pursuant to Federal

12 Rule of Civil Procedure 12(b)(6).  In considering a motion to

13 dismiss, the court must accept the allegations in the complaint

14 as true and draw all reasonable inferences in favor of the

15 plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),

16 overruled on other grounds by Davis v. Scherer, 468 U.S. 183

17 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  Assertions that

18 are mere "legal conclusions," however, are not entitled to the

19 assumption of truth.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950

20 (2009), (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

21 (2007)).  To survive a motion to dismiss, a plaintiff needs to

22 plead "enough facts to state a claim to relief that is plausible

23 on its face."  Twombly, 550 U.S. at 570.  Dismissal is

24 appropriate where the plaintiff fails to state a claim

25 supportable by a cognizable legal theory.  Balistreri v.

26 Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).

27     Upon granting a motion to dismiss for failure to state a

28 claim, the court has discretion to allow leave to amend the

                                5

complaint pursuant to Federal Rule of Civil Procedure 15(a).

"Dismissal with prejudice and without leave to amend is not

appropriate unless it is clear . . . that the complaint could

not be saved by amendment."  Eminence Capital, L.L.C. v. Aspeon,

Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

> 2.   12(b)(1)Motion to Dismiss

> Dismissal is appropriate under Rule 12(b)(1) when the
> District Court lacks subject matter jurisdiction over
> the claim. Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1)
> motion may either attack the sufficiency of the
> pleadings to establish federal jurisdiction, or allege
> an actual lack of jurisdiction which exists despite
> the formal sufficiency of the complaint.  Because
> challenges to standing implicate a federal court's
> subject matter jurisdiction under Article III of the
> United States Constitution, they are properly raised
> in a motion to dismiss under Rule 12(b)(1).

Meaunrit v. ConAgra Foods Inc., 2010 WL 2867393, *3 (N.D. Cal.

July 20, 2010) (internal citations omitted).  When a defendant

brings a motion to dismiss for lack of subject matter

jurisdiction pursuant to Rule 12(b)(1), the plaintiff has the

burden of establishing subject matter jurisdiction.  See

Rattlesnake Coalition v. United States Envtl. Protection Agency,

509 F.3d 1095, 1102, FN 1 (9th Cir. 2007).

There are two permissible jurisdictional attacks under Rule

12(b)(1): a facial attack, where the court's inquiry is limited

to the allegations in the complaint; or a factual attack, which

permits the court to look beyond the complaint at affidavits or

other evidence.  Savage v. Glendale Union High School, 343 F.3d

1036, 1039 n.2 (9th Cir. 2003).  "In a facial attack, the

challenger asserts that the allegations contained in a complaint

are insufficient on their face to invoke federal jurisdiction,

whereas in a factual attack, the challenger disputes the truth

1   of the allegations that, by themselves, would otherwise invoke

2   federal jurisdiction." Li v. Chertoff, 482 F.Supp.2d 1172, 1175

3   (S.D. Cal. 2007) (internal citations omitted).  If the moving

4   party asserts a facial challenge, the court must assume that the

5   factual allegations asserted in the complaint are true and

6   construe those allegations in the light most favorable to the

7   plaintiff.  Id. at 1175, citing Warren v. Fox Family Worldwide,

8   Inc., 328 F. 3d 1136, 1139 (9th Cir. 2003).  If the moving party

9   asserts a factual attack, the court may resolve the factual

10  disputes, looking beyond the Complaint to matters of public

11  record, without presuming the truthfulness of the plaintiff's

12  allegations.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

13      Here, Defendants ask the Court to take judicial notice of

14  several affidavits and request an evidentiary hearing as to any

15  disputed facts concerning the Court's jurisdiction, implying a

16  factual attack.[2]  The affidavits (Doc. #25, exhibits 1-5), are

17  affidavits on the docket that were previously submitted in

18  opposition to Plaintiffs' motion for a preliminary injunction.

19  The affidavits address factual disputes surrounding whether or

20  not any of the tax assessments were in error, whether Plaintiffs

21  may have the money to repay delinquent assessments, and what

22  procedures were followed to review Plaintiffs' account.

23  Documents attached to two of the affidavits that were submitted

24  show the form Plaintiffs filled out to become a reimbursing

25  employer, the information that was sent to Indian tribes in

26  _____

27  [2] The Court did not hold an evidentiary hearing in relation to
    this motion, but did hold an extensive hearing reviewing all
    evidence presented in connection with the preliminary

28  injunction; the same evidence which Defendants now ask the Court
    to consider.

1   California regarding the option to be a reimbursing employer,

2   and internal information about the reimbursing employer option

3   to which Defendants were privy.  These documents are not

4   relevant to the question of the Court's jurisdiction, as they do

5   not address the jurisdictional challenges brought by Defendants

6   concerning Eleventh Amendment immunity, <u>Ex Parte Young</u>, or the

7   Tax Injunction Act.  Accordingly, because the extrinsic evidence

8   submitted by Defendants is not relevant to the jurisdictional

9   challenge, the Court will view Defendants' challenge as a facial

10  attack, limiting review to the allegations of the Complaint and

11  taking the allegations of the Complaint as true.

12          3.   <u>Judicial Notice</u>

13          Defendants incorporate by reference their brief in

14  opposition to the motion for preliminary injunction (Doc. #25),

15  and ask the Court to take judicial notice of several affidavits

16  that were submitted in conjunction with the opposition to the

17  motion to dismiss.  (See FN 1 of Defendants' Motion to Dismiss).

18  Defendants request judicial notice of previously submitted

19  declarations of Stanley M. Adge, Robert T. Brewer, Loretta

20  Paullin-Delaney, Michelle Sutton-Riggs and Martin Swindell (Doc.

21  #25, exhibits 1-5).

22          Generally, the court may not consider material beyond the

23  pleadings in ruling on a motion to dismiss for failure to state

24  a claim.  There are two exceptions: when material is attached to

25  the complaint or relied on by the complaint, or when the court

26  takes judicial notice of matters of public record, provided the

27  facts are not subject to reasonable dispute.  <u>Sherman v. Stryker</u>

28  <u>Corp.</u>, 2009 WL 2241664 at *2 (C.D. Cal. Mar. 30, 2009) (internal

1   citations omitted).   Courts may consider extrinsic evidence when

2   "plaintiff's claim depends on the contents of a document, the

3   defendant attaches the document to its motion to dismiss, and

4   the parties do not dispute the authenticity of the document.

5   . . ."   Knievel v. ESPN, 393 F.3d 1069, 1076 (9th Cir. 2005).

6   Further, as discussed above, the court may consider extrinsic

7   evidence when deciding factual challenges to jurisdiction under

8   Rule 12(b)(1).

9        Plaintiffs attached to the Complaint EdCo's Federal Charter

10   of Incorporation (Doc. #1, ex. #1), and notices of levies and

11   liens from EDD (Doc. #1, ex. #2).   The Court will consider these

12   documents, as they are attached to the Complaint.   Plaintiffs

13   also note that should the Court consider matters outside the

14   pleadings as requested by Defendants, this will convert the Rule

15   12(b)(6) motion into Rule 56 motion for summary judgment.   See

16   Keams v. Tempe Technical Institute, Inc., 110 F.3d 44, 46 (9th

17   Cir. 1997), and that if converted, all parties must be given a

18   reasonable opportunity to present all material that is pertinent

19   to the motions.   See Fed. R. Civ. P. 12(d).

20        The Court will not convert the 12(b)(6) motion to dismiss

21   into a motion for summary judgment by considering matters

22   outside the pleadings.   The affidavits do not form the basis of

23   the Complaint, and are not matters of public record, thus the

24   Court will not take judicial notice as requested by Defendants.

25   See Dao v. University of California, et al., 2004 WL 1824129, *4

26   (N.D. Cal. Aug. 13, 2004) (noting that affidavits are not

27   pleading exhibits unless they form the basis of the complaint,

28   and the Ninth Circuit has found reversible error where a court

took judicial notice of an affidavit outside of the pleadings
without converting the motion to dismiss into a motion for
summary judgment).

    B.   <u>Jurisdictional Challenges</u>

        1.   <u>Eleventh Amendment Immunity</u>

    Defendants argue that the Court should dismiss the
Complaint for lack of jurisdiction.  The Eleventh Amendment
grants states sovereign immunity from suit.  See, e.g., <u>Agua
Caliente Band of Cahuilla Indians v. Hardin</u>, 223 F.3d 1041, 1045
(9th Cir. 2000).  "Since the Supreme Court's decision in <u>Ex
parte Young</u>, 209 U.S. 123 (1908), Courts have recognized an
exception to the Eleventh Amendment bar for suits for
prospective declaratory and injunctive relief against state
officers, sued in their official capacities, to enjoin an
alleged ongoing violation of federal law."  <u>Id.</u>

    In <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261
(1997), a tribe's claim to submerged lands located within the
boundaries of the Coeur d'Alene Reservation was not found to be
within the <u>Ex Parte Young</u> exception.  <u>Agua Caliente</u>, 223 F.3d at
1046 (citing <u>Coeur d' Alene</u>, 521 U.S. at 282.  The tribe in
<u>Couer D'Alene</u> brought land title claims and sought declaratory
and injunctive relief establishing its exclusive right to use
and enjoy the submerged lands and prohibiting defendants from
regulating the lands.  The Supreme Court determined that <u>Ex
Parte Young</u> did not apply because of the unique nature of the
tribe's claims, which the Court determined were the functional
equivalent of a quiet title action that would have divested the
state of substantially all regulatory power over the land at

1   issue.  _Agua Caliente_ , 223 F.3d at 1046, citing _Coeur d'Alene,_

2   498 U.S. 505.

3        However, in _Agua Caliente_, an Indian tribe challenged the

4   state's application California's sales tax on purchases made by

5   non-Indians at a hotel located on a reservation as a violation

6   of federal law prohibiting state taxation of value generating

7   activities on reservation land.  The Ninth Circuit held that

8   this case was distinguishable from _Couer d'Alene_, and that the

9   _Ex Parte Young_ doctrine applied.  The _Agua Caliente_ Court held

10  that action was properly characterized as a suit for declaratory

11  relief against state officers to enjoin an ongoing violation of

12  federal law, rather than a suit against the state itself, thus

13  it came under the _Ex Parte Young_ exception to Eleventh Amendment

14  immunity, even though the tribe had an available remedy under

15  state law.  The Court stated that "there existed an alternate

16  forum in state court in which the Tribe _could_ raise its claims

17  neither divested the district court of jurisdiction nor removed

18  the case from the Young exception for Eleventh Amendment

19  purposes."  _Agua Caliente_, 223 F.3d at 1049 (emphasis in

20  original).  The Court noted that the Supreme Court's decision in

21  _Coeur d'Alene_ supported this conclusion, as Justice Kennedy

22  stated in the principal opinion that even if there is a prompt

23  and effective remedy in a state forum, a second instance in

24  which Young may serve an important interest is when the case

25  calls for the interpretation of federal law.  _Id._

26       Defendants contend that Plaintiffs' claims are barred by

27  sovereign immunity and the Eleventh Amendment, as the _Ex parte_

28  _Young_ fiction does not lift the sovereign immunity bar to

1  Plaintiffs' claims for prospective relief against the individual

2  Defendants.  Plaintiffs argue that since they dismissed

3  defendants the State of California and EDD, the sovereign

4  immunity arguments are no longer relevant as to the State and

5  EDD.  With respect to the remaining Defendants, Plaintiffs

6  contend that the Ex Parte Young exception to Eleventh Amendment

7  immunity applies to this suit.

8       The Court finds Plaintiffs' argument persuasive that this

9  suit for declaratory and injunctive relief falls within the Ex

10 Parte Young exception to the Eleventh Amendment.  Accordingly,

11 the Court finds that Eleventh Amendment immunity is not a bar to

12 Plaintiffs' Complaint.

13              2.   Tax Injunction Act

14      Defendants next contend that Plaintiffs' claims are barred

15 by the Tax Injunction Act.  Plaintiffs argue in opposition that

16 the Tax Injunction Act does not apply to this suit, as it is a

17 suit brought by an Indian tribe under 28 U.S.C. § 1362.

18      The Tax Injunction Act, 28 U.S.C. § 1341 states that "the

19 district courts shall not enjoin, suspend or restrain the

20 assessment, levy, or collection of any tax under State law where

21 a plain, speedy and efficient remedy may be had in the courts of

22 such State."  However, the Tax Injunction Act's jurisdictional

23 bar does not apply to Indian tribes bringing suit under 28

24 U.S.C. § 1362.  Agua Caliente, 223 F.3d at FN 5 (citing Moe v.

25 Confederated Tribes of the Colville Indian Reservation, 425 US

26 463, 472-474 (1976)).  California v. Grace Brethren Church, 457

27 U.S. 393 (1982), the case relied on by Defendants to argue that

28 the Tax Injunction Act bars this Court's jurisdiction is

1   inapplicable, as it was not a suit brought by an Indian tribe

2   under 28 U.S.C. § 1362.  Thus, this Court does not find that its

3   jurisdiction over Plaintiffs' suit is barred by the Tax

4   Injunction Act.

5        C.   Claims for Relief

6        Plaintiffs bring two claims for relief: (1) a claim for

7   declaratory relief, seeking a declaratory judgment that

8   Defendants' collection actions violate Plaintiffs' tribal

9   sovereign immunity; and (2) a claim for injunctive relief

10  enjoining Defendants from continuing to serve notices of levy

11  and liens on Plaintiffs' assets.  Defendants argue that

12  Plaintiffs' claims for declaratory and injunctive relief should

13  be dismissed for failure to state a claim, under several

14  theories.

15            1.   Abrogation and Waiver of Sovereign Immunity

16       First, Defendants contend that Congress abrogated tribal

17  sovereign immunity against the State's collection of taxes under

18  the UI program.  Alternatively, Defendants assert that by

19  electing to participate in California's reimbursable program,

20  Plaintiffs expressly waived tribal sovereign immunity to the

21  State's collection of Plaintiffs' tax delinquency.  Plaintiffs

22  have alleged that Congress did not abrogate sovereign immunity,

23  nor did the tribe waive immunity.

24       Federally recognized Indian tribes are immune from suit by

25  any entity, including state governmental agencies, absent a

26  clear waiver by the tribe or congressional abrogation.  Okla.

27  Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498

28  U.S. 505, 509 (1991) (citing Santa Clara Pueblo v. Martinez, 436

1   U.S. 49, 58 (1978).  Waiver cannot be implied or imputed, it

2   must be unequivocally expressed.  Santa Clara Pueblo, 436 U.S.

3   at 58. Tribal sovereign immunity is a matter of federal law, and

4   cannot be diminished by the States.  Kiowa Tribe of Okla. v.

5   Mfg. Technologies, Inc., 523 U.S. 751, 756 (1998).

6       "There is a difference between the right to demand

7   compliance with state laws and the means available to enforce

8   them."  Kiowa, 523 U.S. at 755; see also Okla. Tax Comm'n, 498

9   U.S. at 514 (noting that while sovereign immunity bars the Sate

10  from pursing the most efficient remedy, adequate alternatives,

11  such as lobbying Congress for legislation, exist).

12      Further, tribal sovereign immunity also extends to entities

13  that are arms of the tribe.  Allen v. Gold Country Casino, 464

14  F.3d 1044, 1046 (9th Cir. 2006).  When an Indian tribe

15  establishes an entity to conduct business activities, that

16  entity is immune if it functions as an arm of the tribe.  Id.

17  Further, "like foreign sovereign immunity, tribal immunity is a

18  matter of federal law."  Kiowa, at 523 U.S. 759.  Though

19  Defendants assert that Congress clearly abrogated tribal

20  sovereign immunity when it amended FUTA to require states to

21  permit Indian tribes to participate in state reimbursable

22  programs, the Court is not persuaded by this argument.  The 2001

23  FUTA Amendments at issue state that:

24      The State law shall provide that a governmental
        entity, included an Indian tribe, or any other
25      organization (or group of governmental entities or
        other organizations) which, but for the requirements
26      of this paragraph, would be liable for contributions
        with respect to service to which paragraph (1) applies
27      may elect, for such minimum period and at such time as
        may be provided by State law, to pay (in lieu of such
28      contributions) into the State unemployment fund
        amounts equal to the amounts of compensation

14

attributable under the State law to such service.  The
State law may provide safeguards to ensure that
governmental entities or other organizations so
electing will make the payments required under such
elections.

26 U.S.C. § 3309(a)(2).  The statute goes on to state that

states may take "reasonable measures" to ensure that Indian

tribes electing the reimbursable program pay their unemployment

insurance tax, such as requiring a tribe to post a payment bond.

26 U.S.C. § 3309(d).  However, the 2001 Amendments do not

clearly state that tribal sovereign immunity is abrogated.

Because abrogation of tribal sovereign immunity must be express

and may not be implied, the Court does not find that the 2001

FUTA Amendments expressly abrogate tribal immunity.  Likewise,

Plaintiffs have alleged that the tribe did not waive its

immunity, and Defendants' argument that Plaintiffs' did so

simply by electing to become a reimbursable employer is not

persuasive.

2.   <u>Immunity for Individual Indians</u>

Defendants argue that tribal sovereign immunity neither

bars collection activities against individual Indian's serving

as Plaintiff's agents or officers, nor prohibits the seizure of

tribal assets located off the reservation.  As noted by

Plaintiffs, none of the plaintiffs are individual Indians,

therefore arguments regarding the sovereign immunity of

individual Indians are not relevant to the motion to dismiss.

3.   <u>Seizure of Assets Outside the Reservation</u>

With respect to seizure of tribal assets off the

reservation, Plaintiffs assert that sovereign immunity applies

to tribal assets and property, regardless of whether it is

located on or off of a reservation.  The Complaint alleges that Defendants' collection actions unlawfully encumber tribal lands and other tribal assets, both on and off reservation.  Compl., ¶ 31.  While the state power over Indian affairs is considerably more expansive outside the reservation than within reservation boundaries, Washington v. Confederated Tribes of Colville Indian Reservation, 447 U.S. 134, 162 (1980), tribal immunity does extend to activities off the reservation.  Winnebago Tribe of Nebraska v. Stovall, 216 F.Supp.2d 1226, 1235-36 (D. Kan., 2002) (citing Kiowa, 523 U.S. 751); aff'd 314 F.3d 1202 (10th Cir. 2003).  The allegations of the Complaint are sufficient at this early stage to overcome the argument that Defendants may have some authority over tribal assets outside the reservation.

### 4.  Tax Refund Suit

Defendants contend that Plaintiffs fail to state a claim for a tax refund because the time to petition for reassessment of their taxes has expired and they are not entitled to a refund as they have failed to pay the tax.  However, the Complaint does not bring a claim for a tax refund nor contain allegations that Plaintiffs are entitled to a tax refund.  On the contrary, the allegations of the Complaint are that Mainstay has been working with Defendants to determine how much money Mainstay owes, and has paid Defendants a partial refund on money owed.  Compl., ¶ 26.  Thus, the Court does not find merit in Defendants' tax refund argument, and will not dismiss the suit on the grounds that it is actually a tax refund case.

### 5.  Nonjudicial Collection

In Defendants' Reply brief, they attempt to distinguish

16

nonjudicial collection from judicial suits, arguing that the
doctrine of sovereign immunity does not bar nonjudicial
collection activity.  Defendants contend that to the extent that
Indian tribes have sovereign immunity, it is only immunity
against suit, and not immunity against nonjudicial collection
activities such as the liens and levies at issue in this case.
Plaintiffs address this argument in the Sur-Reply, arguing that
the doctrine of tribal sovereign immunity is broader than simply
immunity from suit, and extends to immunity from state
administrative proceedings such as Defendants' nonjudicial
collection activity.  Plaintiffs note that Defendants fail to
cite any authority supporting the theory that tribal sovereign
immunity from state jurisdiction applies only to court
proceedings and not to state administrative processes.

Tribal sovereign immunity is based on Congress' recognition
that Indian tribes possess the attributes of a common law
sovereign.  See In re Greene, 980 F.2d 590, 596 (9th Cir. 1992).
Plaintiffs contend that there is no meaningful distinction
between a sovereign being involuntarily subjected to state court
proceedings, including the court's authority to enforce its
decision, and a sovereign being involuntarily subjected to a
state administrative process, including the state agency's
authority to administratively enforce its decision.  Consistent
with this reasoning, courts have recognized tribal immunity from
state administrative processes.  In Middletown Rancheria of Pomo
Indians v. Workers' Comp. Appeals Bd., 60 Cal.App.4th 1340,
1347-48 (1998), the court ruled that the tribe had sovereign
immunity from the workers' compensation process and that the

1  Worker's Compensation Appeals Board had no jurisdiction over the
2  tribe to enforce its laws, based on sovereign immunity.

3      In <u>Winnebago Tribe</u>, the District Court issued a preliminary
4  injunction, affirmed by the Tenth Circuit, barring the State of
5  Kansas from enforcing its Motor Vehicle Fuel Tax Act against a
6  tribal corporation.  Kansas was, among other things, seizing the
7  tribal corporation's property, entering orders for jeopardy
8  assessments, and issuing tax warrants.  The court granted the
9  tribe's motions for a temporary restraining order and a
10 preliminary injunction, finding that these nonjudicial
11 collection activities to violate the tribe's sovereign immunity.
12 <u>Winnebago Tribe</u>, 216 F.Supp.2d at 1235-1240.

13     Tribal immunity is a matter of federal law and not subject
14 to diminution by the states.  <u>Kiowa</u>, 523 U.S. at 756. In the
15 absence of countervailing authority, the Court finds persuasive
16 Plaintiffs' argument that sovereign immunity bars nonjudicial
17 collection activities, as the state cannot circumvent tribal
18 immunity by obtaining through administrative procedures what
19 could not be obtained through the judicial process.  At this
20 stage in the proceedings, the Court will not dismiss the
21 Complaint on the basis of Defendants' argument that the
22 distinction between liens and levies obtained through a state
23 administrative procedure and those obtained through a judicial
24 process is sufficient to overcome the protections of tribal
25 sovereign immunity.

26          6.   <u>25 U.S.C. § 476</u>

27     Lastly, Defendants' Reply brief raised the argument that
28 "Plaintiffs allege in their Complaint, but do not brief in

                                18

1    opposition to EDD's motion, that Defendants' nonjudicial

2    collection activity violates 25 U.S.C. section 476."  Reply,

3    p. 11.  Defendants contend that 25 U.S.C. § 476 is not a source

4    of substantive rights, and that the Complaint should be

5    dismissed for that reason.  Defendants did not raise any

6    argument against 25 U.S.C. § 476 in their Motion to Dismiss,

7    thus the Court asked Plaintiffs to address this new argument in

8    the Sur-Reply.

9         The Indian Reorganization Act of 1934 ("IRA") provides that

10   an Indian tribe may elect to organize (pursuant to its terms)

11   and to adopt a constitution, which shall become effective upon

12   ratification by the tribe and approval of the Secretary of the

13   Interior.  25 U.S.C. § 476(a).  The Complaint alleges that "Blue

14   Lake Rancheria is governed by a Constitution, adopted under the

15   Indian Reorganization Act, 25 U.S.C. § 476, and approved by the

16   Secretary of the United States Department of Interior." Compl.,

17   ¶ 17.  Section 476(e) provides that, upon approval of the

18   constitution:

19        In addition to all powers vested in any Indian tribe
          or tribal council by existing law, the constitution
20        adopted by said tribe shall also vest in such tribe or
          its tribal council the following rights and powers: To
21        employ legal counsel; to prevent the sale,
          disposition, lease or encumbrance of tribal lands,
22        interests in lands or other tribal assets without the
          consent of the tribe; and to negotiate with the
23        Federal, State, and local governments.

24        Plaintiffs point out that Defendants offer no authority to

25   support their argument that Section 476 is not a source of

26   substantive rights and mandates dismissal of the complaint.

27   Further, Plaintiffs argue that the Supreme Court has directed

28   that statutes are to be construed liberally in favor of Indian

1  tribes, with ambiguous provisions interpreted in their benefit.

2  County of Yakima v. Confederated Tribes and Bands of the Yakima

3  Indian Nation, 502 US 251, 269 (1992).  The Ninth Circuit has

4  viewed Section 476 as endowing tribes with the right to lease

5  tribal land only with the tribes' consent.  See Fort Mojave

6  Tribe v. County of San Bernardino, 543 F.2d 1253, 1259 (9th Cir.

7  1976) (noting that Section 476 "explicitly gives the tribe the

8  right to prevent the lease of tribal lands.").  Thus,

9  Plaintiffs' contend that Section 476 has been recognized as a

10  source of substantive rights regarding a tribes' control of its

11  property.  While the impact of Section 476 has not been

12  extensively briefed, the Court at this time is not persuaded by

13  Defendants' unsupported argument that Plaintiffs' Complaint must

14  be dismissed for failure to state a claim as to which relief may

15  be granted under 25 U.S.C. § 476.

16

17                          IV.  ORDER

18       For the reasons set forth above, Defendants' motion to

19  dismiss is DENIED.  Defendants are ordered to file their Answer

20  to the Complaint within twenty (20) days of the date of this

21  Order.

22       IT IS SO ORDERED.

23  Dated: December 5, 2011

24                              _____
                                JOHN A. MENDEZ,
                                UNITED STATES DISTRICT JUDGE

25

26

27

28

20